IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KENYON ENERGY, LLC; CLAY M. BIDDINGER, | ) ) ) | CIV. NO. 22-00534-HG-RT |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| EXYTE ENERGY, INC., | ) ) | |
| Defendant. | ) ) ) ) | |

**ORDER CONCERNING SUBJECT-MATTER JURISDICTION**

**and**

**DENYING PLAINTIFFS KENYON ENERGY, LLC AND CLAY M. BIDDINGER'S MOTION FOR SUMMARY JUDGMENT (ECF No. 70)**

**and**

**DENYING DEFENDANT EXYTE ENERGY, INC.'S MOTION TO COMPEL ARBITRATION (ECF No. 69)**

Plaintiffs Kenyon Energy, LLC and Clay M. Biddinger filed a Complaint in this Court for declaratory and injunctive relief. The Complaint was filed against Defendant Exyte Energy, Inc. Plaintiffs allege the Court has subject-matter jurisdiction over the matter pursuant to diversity jurisdiction, 28 U.S.C. § 1332.

In their Complaint, Plaintiffs state that in November 2022, Defendant Exyte Energy, Inc., formerly known as Gehricher Solar America Corp., initiated an arbitration proceeding before Dispute Prevention & Resolution Inc., in Honolulu, Hawaii.

1

Plaintiffs assert that the arbitration proceeding arose from a contract that Defendant Exyte Energy, Inc. entered into with SSA Solar of HI 2, LLC and SSA Solar of HI 3, LLC, as signatories.  Plaintiffs assert that Defendant Exyte Energy, Inc. initiated the arbitration against numerous entities who did not sign the contract, including Plaintiff Kenyon Energy LLC, Plaintiff Clay M. Biddinger, individually, and two other entities: Sun Financial, LLC; and Bay4 Energy Services, LLC.

Plaintiffs seek a declaratory judgment and injunction ordering that Plaintiffs Kenyon Energy, LLC and Clay M. Biddinger, individually, are not subject to the arbitration proceeding initiated by Defendant Exyte Energy, Inc.  Plaintiffs filed a Motion for Summary Judgment seeking such a ruling.

Defendant Exyte Energy, Inc. filed a Motion to Compel Arbitration as to Plaintiffs, asserting that they are subject to the arbitration proceeding as non-signatories relying on Hawaii state law equity principles as well as theories of estoppel and piercing the corporate veil/alter-ego.

Despite the Parties' voluminous pleadings and Motions, the Court is without sufficient information to determine whether it has subject-matter jurisdiction over this case pursuant to diversity jurisdiction.

In addition, the Court is without sufficient information to allow it to determine if all of the necessary parties have been

joined in this litigation pursuant to Fed. R. Civ. P. 19.

The subject-matter jurisdiction issues are intertwined with the questions regarding corporate structure and equity principles.  Resolution of these questions is necessary to evaluate the arbitration questions at issue here.

Plaintiffs Kenyon Energy, LLC and Clay M. Biddinger's Motion for Summary Judgment (ECF No. 70) and Defendant Exyte Energy, Inc.'s Motion to Compel Arbitration (ECF No. 69) are **DENIED**.

## PROCEDURAL HISTORY

On December 23, 2022, Plaintiffs Kenyon Energy and Clay Biddinger filed the Complaint.  (ECF No. 1).

On June 14, 2024, Defendant Exyte Energy filed its MOTION TO COMPEL ARBITRATION and CONCISE STATEMENT OF FACTS.  (ECF Nos. 69, 68).

On the same date, Plaintiffs Kenyon Energy and Clay Biddinger filed their MOTION FOR SUMMARY JUDGEMENT and CONCISE STATEMENT OF FACTS.  (ECF Nos. 70, 71).

On June 25, 2024, the Court issued the briefing schedule. (ECF No. 81).

On July 15, 2024, Plaintiffs filed an OPPOSITION and CONCISE STATEMENT OF FACTS to Defendant's Motion to Compel Arbitration. (ECF No. 88, 89).

On the same date, Defendant filed an OPPOSITION AND CONCISE

3

STATEMENT OF FACTS to Plaintiffs' Motion for Summary Judgement. (ECF No. 91, 90).

On August 1, 2024, Plaintiffs filed a REPLY AND CONCISE STATEMENT OF FACTS regarding their Motion for Summary Judgement. (ECF No. 98, 99).

On the same date, Defendant filed a REPLY AND CONCISE STATEMENT OF FACTS regarding its Motion to Compel Arbitration. (ECF No. 101, 100).

On September 19, 2024, the Court held a hearing on the Parties' Motions.  (ECF No. 105).

## <u>BACKGROUND</u>

According to the pleadings:

In May 2016, Defendant Exyte Energy, Inc., a solar photovoltaic system contractor, entered into two separate agreements to design and build solar power systems in Lahaina and Kihei on the island of Maui, Hawaii.  (Pl.'s CSF at ¶¶ 8-10, ECF No. 71).

The Lahaina agreement was entered into with a limited liability company named SSA Solar of HI 2 LLC ("SSA 2").

The Kihei agreement was entered into with a different limited liability company named SSA Solar of HI 3 LLC ("SSA 3").

SSA 2 and SSA 3 are alleged to be special purpose subsidiaries owned by a corporate entity called Sun Financial,

LLC, who is not named as a party in this case.   (Pl.'s CSF at ¶¶ 3, 11, ECF No. 71).

Defendant Exyte Energy, Inc. claims that Sun Financial, LLC, in turn, relied on Plaintiff Kenyon Energy, LLC to identify, set up, and manage the Lahaina and Kihei projects.

Defendant Exyte Energy, Inc. claims that Kenyon Energy, LLC also used a fourth entity called Bay4 Energy Services, LLC to manage the projects.

Defendant Exyte Energy, Inc. claims that Plaintiff Kenyon Energy, LLC negotiated the contracts with Defendant Exyte Energy, Inc., but the contracts were ultimately signed by SSA 2 and SSA 3.   (Def.'s CSF in Opp. to Pl.'s MSJ at ¶16, ECF No. 90).

Defendant Exyte Energy, Inc. claims that Plaintiff Clay M. Biddinger was the person behind the multiple entities and that he served in the following positions:

> (1)   as the manager, chairman, and CEO of Kenyon Energy, LLC;
>
> (2)   as the manager, chairman, and CEO of Sun Financial, LLC;
>
> (3)   as sole member and manager of both SSA 2 and SSA 3.

(Pl.'s CSF at ¶¶ 5-6, ECF No. 71; Def.'s CSF at ¶¶ 6-7, ECF No. 68; Pl.'s CSF in Opp. at ¶¶ 6-7, ECF No. 89).

The Parties dispute what, if any, position Plaintiff Biddinger held with Bay4 Energy Services, LLC.

The Parties agree that Plaintiff Kenyon Energy, LLC did not

itself sign the contracts with Defendant Exyte Energy, Inc.

In 2018, two years after the agreements were consummated, a contract dispute arose regarding Defendant Exyte Energy, Inc.'s performance under the contracts.  (Pl.'s CSF at ¶¶ 25-27, ECF No. 71).  The dispute regarding Defendant Exyte Energy, Inc.'s performance led the SSAs (and affiliates) to withhold payment from Defendant Exyte Energy, Inc. in the amount of approximately $4.2 million dollars.  (Pl.'s CSF at ¶27, ECF No. 71).

On November 18, 2022, Defendant Exyte Energy sought to resolve the dispute by making a demand for arbitration against SSA 2 and SSA 3 as well as four additional entities affiliated with the SSAs: Sun Financial, LLC; Kenyon Energy, LLC; Clay Biddinger, individually, and Bay4 Energy Services, LLC.  (CSF at ¶ 28, ECF No. 71).

On December 23, 2022, two of the entities, Plaintiffs Kenyon Energy, LLC, and Clay Biddinger, individually, filed the Complaint in the United States District Court for the District of Hawaii, seeking declaratory and injunctive relief from the arbitration.  The arbitration has been stayed pending the resolution of this case.

In the Complaint, Plaintiffs assert that this Court has subject-matter jurisdiction pursuant to diversity jurisdiction under 28 U.S.C. § 1332.  (Complaint at ¶ 11, ECF No. 1).

## **STANDARD OF REVIEW**

A plaintiff has the burden of proving that subject-matter jurisdiction does in fact exist.  <u>Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979).

Federal Rule of Civil Procedure 12(b)(1) requires that a case must be dismissed for lack of subject-matter jurisdiction when the Court lacks a constitutional or statutory basis to adjudicate the controversy.  Fed. R. Civ. P. 12(b)(1); <u>Leeson v. Transamerica Disability Income Plan</u>, 671 F.3d 969, 975 (9th Cir. 2012).

District Courts have a continuing duty to determine whether they have subject-matter jurisdiction.  Fed. R. Civ. P. 12(h)(3). The Ninth Circuit Court of Appeals has held that a court may raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action. <u>Snell v. Cleveland, Inc.</u>, 316 F.3d 822, 826 (9th Cir. 2002) (per curiam).

Plaintiffs allege that the Court has subject-matter jurisdiction pursuant to diversity jurisdiction.  Diversity jurisdiction exists when "the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a)(1).

Plaintiffs must establish diversity of citizenship by a preponderance of the evidence.  <u>See Gaus v. Miles, Inc.</u>, 980 F.2d

7

564, 567 (9th Cir. 1992) (citing <u>McNutt v. General Motors Acceptance Corp</u>., 298 U.S. 178, 189 (1936)); <u>see</u> <u>Williams v. Sugar Hill Music Publ'g, Ltd.</u>, 2006 WL 1883350, at *6 (N.D.Cal. July 7, 2006).

## ANALYSIS

I.  **The Declaratory Judgment Act and Federal Arbitration Act Do Not Confer Federal District Courts With Subject-Matter Jurisdiction**

Pursuant to the Declaratory Judgment Act, federal courts may declare the rights and other legal relations of any interested party seeking such declaration.  28 U.S.C. § 2201(a).  A private lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III, Section 2 of the United States Constitution, and also requires the statutory prerequisite of either federal question jurisdiction or diversity jurisdiction to be present.  <u>Gov't Emps. Ins. Co. v. Dizol</u>, 133 F.3d 1220, 1222-23 (9th Cir. 1998).

Plaintiffs Kenyon Energy, LLC and Clay M. Biddinger filed this Declaratory Judgment action in federal court regarding arbitration agreements.

The Federal Arbitration Act provides a mechanism for enforcing arbitration agreements, but as in the case of the Declaratory Judgment Act, it does not confer the federal district courts with subject-matter jurisdiction.  <u>See</u> <u>Hall St. Assocs., L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576, 581-82 (2008).

8

Federal courts are courts of limited jurisdiction.  Unlike state courts, federal courts have no inherent or general subject-matter jurisdiction and can adjudicate only those cases which the Constitution and Congress authorize them to adjudicate, i.e., those involving diversity of citizenship, a federal question, or to which the United States is a party.  See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).

Federal courts are presumptively without jurisdiction over civil actions unless the party asserting jurisdiction meets its burden to prove subject-matter jurisdiction exists.  See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).

Plaintiffs filed the Complaint and assert there is subject-matter jurisdiction on the basis of diversity jurisdiction.

## II.  Diversity Jurisdiction

Diversity jurisdiction exists when there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a); Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996).

### A.  Natural Persons

To establish citizenship of a natural person for diversity purposes, the person must be both (1) a citizen of the United States and (2) a domiciliary of one particular State.  Kantor v.

9

Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983).

The Court looks to the party's domicile at the time the lawsuit was filed in evaluating citizenship.  Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570-71 (2008).  Domicile is the place the person lives and intends to remain permanently. Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). An allegation of diversity based on a party's residence rather than citizenship is generally defective.  Carolina Cas. Ins. Co. v. Team Equip., Inc., 741 F.3d 1082, 1087 (9th Cir. 2014).

## B.   Corporations

For diversity purposes, a corporation shall be deemed to be a citizen of every State and foreign state in which it has been incorporated and of the State or foreign state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

A corporation incorporated in one State and having its principal place of business in another is a citizen of both States.  Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co., 465 F.2d 489, 491-92 (9th Cir. 1972).

The phrase "principal place of business" means the place where a corporation's board and high level officers direct, control, and coordinate activities.  Hertz Corp. v. Friend, 559 U.S. 77, 80-81, 92-93 (2010).  The United States Supreme Court refers to this as the "nerve center" of activity for the

10

corporation.  Id.  Typically, the "nerve center" is at the
corporate headquarters provided that the headquarters is the
actual center of direction, control, and coordination and not
simply an office where some meetings are occasionally held.  Id.
The party invoking jurisdiction has the burden of proving the
location of the corporation's nerve center.  Id. at 96-97.

Subsidiary and parent corporations are generally considered
separate entities for diversity jurisdiction purposes.  Finsa
Portafolios, S.A. de C.V. v. Opengate Capital, LLC, 2020 WL
7862124, at *5 (C.D. Cal. Aug. 19, 2020).  The recognized
exception to this rule is where the subsidiary is the alter-ego
of the parent corporation.  Danjaq, S.A. v. Pathe Commc'ns Corp.,
979 F.2d 772, 775 (9th Cir. 1992).

The Ninth Circuit Court of Appeals has explained that
"courts must be alert to the possibility of jurisdictional
manipulation" and may inquire into an alter-ego relationship for
purposes of subject-matter jurisdiction.  3123 SMB LLC v. Horn,
880 F.3d 461, 466, 470-71 (9th Cir. 2018).

Courts may pierce the corporate veil jurisdictionally where
there is evidence of (1) such unity of interest and ownership
that in reality no separate entity exists; and (2) failure to
disregard the separate entities would result in fraud or
injustice.  Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,
94 F.3d 586, 591 (9th Cir. 1996); see Grayson Service, Inc. v.

11

Crimson Resource Management Corp., 2016 WL 8730734, *7 (E.D. Cal. Feb. 5, 2016) (explaining alter-ego liability in the context of analyzing diversity jurisdiction).

**C.   Partnerships, Limited Liability Companies, and Associations**

The citizenship of business entities such as limited partnerships, limited liability companies, and associations is determined differently than that of corporations.  Americold Realty Trust v. Conagra Foods, Inc., 577 U.S. 378, 381-82 (2016). Unincorporated business entities are treated as a citizen of each State where its members are citizens.  Grupo Dataflux, 541 U.S. at 569; see Carden v. Arkoma Assocs., 494 U.S. 185, 195 (1990).

The location of the business entity's principal place of business or headquarters is irrelevant to subject-matter jurisdiction.  Lincoln Property Co. v. Roche, 546 U.S. 81, 84 (2005).  The citizenship of the limited liability company ("LLC") or other unincorporated business entity is determined by examining the citizenship of all of its partners or members, not the location of the entity itself or the laws under which it was organized.  Id.; Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) (explaining that a limited liability company is a citizen of every State of which its owners or members are citizens).

If any member of the LLC is itself a partnership or

12

association, the plaintiff must establish the citizenship of each "submember" as well.  Johnson, 437 F.3d at 899; see V&M Star, LP v. Centimark Corp., 596 F.3d 354, 356 (6th Cir. 2010).

If one or more of the business entity's members or partners is a corporation, the citizenship of the corporation must be evaluated in determining the existence of complete diversity. 3123 SMB LLC, 880 F.3d at 466.

### D.    Plaintiffs Have Yet To Establish Complete Diversity Between The Parties

The basic requirement in diversity jurisdiction cases is that all plaintiffs have to be of different citizenship from all defendants.  Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 679 (9th Cir. 2006).  The presence of a single plaintiff from the same State as a single defendant deprives the court of subject-matter jurisdiction based on diversity.  Id.

In the Complaint, Plaintiffs Kenyon Energy, LLC and Clay M. Biddinger allege the following regarding their citizenship for purposes of diversity jurisdiction:

> Plaintiff Kenyon [Energy, LLC] is a limited liability
> company duly organized and existing under the laws of
> Florida with its principal place of business located in
> Florida.  Membership interests in Kenyon are held by BR
> Group Holdings LLC ("BRGH"), a Florida limited
> liability company with its principal place of business
> in Florida, and certain individuals who reside in
> Florida and Colorado.  The sole member of BRGH is
> Sinter Holdings, LLC ("Sinter"), a Florida limited
> liability company with its principal place of business
> in Florida.  Sinter's sole member is Tomstemark L.P.

13

("Tomstemark"), a limited partnership organized under
the laws of Nevada.  In turn, Tomstemark's sole general
partner is CMB Holdings of Nevada, Inc., a corporation
duly organized and existing under the laws of Nevada
with its principal place of business located in Nevada.

Plaintiff Clay M. Biddinger is a citizen of Florida.

(Complaint at ¶¶ 7-8, ECF No. 1).

Plaintiffs allege the following regarding Defendant Exyte
Energy, Inc.'s citizenship for purposes of diversity
jurisdiction:

Upon information and belief, Defendant Exyte [Energy,
Inc.] is a corporation duly organized and existing
under the laws of Delaware, with its principal place of
business located either in New Jersey or Washington,
D.C.

(Complaint at ¶ 9, ECF No. 1).

### 1.   The Citizenship Of Plaintiff Kenyon Energy, LLC Is Unclear

Plaintiffs' allegations as to the citizenship of Plaintiff
Kenyon Energy, LLC and all of its members and submembers are
insufficient to confer the Court with subject-matter jurisdiction
based on diversity.

First, Plaintiffs do not identify all of the members of
Kenyon Energy, LLC.  Plaintiffs state "certain individuals"
"reside" in Florida and Colorado but do not identify the
individuals.  The allegations do not demonstrate the
"citizenship" of the members as required.  There is no ability to
know who they are or what their domicile is.

14

Second, there are numerous "submembers" of business entities for which there is insufficient information to determine the submembers' citizenship.  As explained above, for each member of the LLC that is a partnership, LLC, or association, the plaintiff must establish the citizenship of each "submember."  Johnson, 437 F.3d at 899; see V&M Star, LP, 596 F.3d at 356.

Third, Plaintiffs repeatedly refer to the principal place of business or State or organization of the LLCs which is irrelevant for determining citizenship.  Lincoln Property Co., 546 U.S. at 84.  The citizenship of the LLC is determined by examining the citizenship of all of its partners or members, not the location of the entity itself.  Id.; Johnson, 437 F.3d at 899.  In addition, there is not enough information to determine the principal place of business for CMB Holdings of Nevada, Inc. in order to evaluate its citizenship.

Plaintiffs must establish the citizenship of every member of Plaintiff Kenyon Energy, LLC, including each of its submembers.  Subject-matter jurisdiction is dependent upon Plaintiffs establishing their citizenship by a preponderance of the evidence.  Lew v. Moss, 797 F.2d 747, 749 (9th Cir. 1986).

The presumption is against jurisdiction and any doubt against the existence of jurisdiction is resolved against finding subject-matter jurisdiction.  Sports Shinko Co., Ltd. v. QK Hotel, LLC, 486 F.Supp.2d 1168, 1172-73 (D. Haw. 2007).

15

### 2.    Citizenship Of Defendant Exyte Energy, Inc. Is Unclear

Plaintiffs' allegations as to the citizenship of Defendant Exyte Energy, Inc. are also insufficient to confer the Court with subject-matter jurisdiction based on diversity.

Plaintiffs assert that Defendant Exyte Energy, Inc. "is a corporation duly organized and existing under the laws of Delaware, with its principal place of business located either in New Jersey or Washington, D.C." (Complaint at ¶ 9, ECF No. 1).

Plaintiffs have not provided sufficient allegation or evidence to establish Defendant's principal place of business. The principal place of business is normally the corporation's "nerve center" where the corporation maintains its headquarters and is the actual center of direction, control, and coordination." Hertz, 559 U.S. at 92-93.

The Court is without sufficient information to determine Defendant Exyte Energy, Inc.'s "nerve center" in order to evaluate whether its citizenship is completely diverse from the citizenship of Plaintiffs.

### 3.    Complete Diversity Of Indispensable Parties Required

Complete diversity is required not only between Plaintiffs and Defendants named in the Complaint but also between those

16

whose joinder is indispensable pursuant to Fed. R. Civ. P. 19.
Exxon Mobil Corp., 545 U.S. at 562.  Complete diversity cannot be
circumvented by omitting a nondiverse indispensable party from
the complaint.  Id.

The evaluation of necessary and indispensable parties is
governed by Federal Rule of Civil Procedure 19.  Confederated
Tribes of Chehalis Indian Rsrv. v. Lujan, 928 F.2d 1496, 1498
(9th Cir. 1991).  A court may consider whether a party is
required pursuant to Fed. R. Civ. P. 19 sua sponte at any stage
in the proceedings.  Republic of the Philippines v. Pimentel, 553
U.S. 851, 861 (2008); CP Nat'l Corp. v. Bonneville Power Admin.,
928 F.2d 905, 911-12 (9th Cir. 1991).  Federal appellate courts
have ruled that District Courts have an "independent
responsibility" to seek the joinder of a required party sua
sponte if necessary.  See Cook v. Food & Drug Admin., 733 F.3d 1,
12 (D.C. Cir. 2013).

The Rule 19 inquiry is two-fold.  Lujan, 928 F.2d at 1498.

First, the Court must determine whether an absent party is
"necessary" to an action.  Id.

Second, if the party is necessary and cannot be joined, the
court must determine whether the party is "indispensable" such
that in "equity and good conscience" the action should be
dismissed.  Id.

Only if the court determines that the absent party is a

17

required party does it proceed to the second Rule 19 inquiry. Alto v. Black, 738 F.3d 1111, 1126 (9th Cir. 2013). "The inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application." Dawavendewa v. Salt River Project Agr. Imp. & Power Dist., 276 F.3d 1150, 1154-55 (9th Cir. 2002); see Cyanotech Corp. v. U.S. Nutraceuticals, LLC, Civ. No. 12-00352 JMS-RLP, 2013 WL 504862, *8 (D. Haw. Feb. 7, 2013) (dismissing the case for failure to join an indispensable party).

On November 18, 2022, Defendant Exyte Energy, Inc. made a demand for arbitration against SSA Solar of HI 2, LLC and SSA Solar of HI 3, LLC, as well as four additional entities affiliated with the SSAs: Sun Financial, LLC; Kenyon Energy, LLC; Clay Biddinger, and Bay4 Energy Services, LLC. (CSF at ¶ 28, ECF No. 71).

Plaintiffs Kenyon Energy, LLC and Clay Biddinger, individually, filed suit, seeking a declaratory judgment claiming that because they were not signatories to Defendant Eyxte Energy Inc.'s agreements with SSA Solar of HI 2, LLC and SSA Solar of HI 3, LLC, they cannot be bound by the arbitration provision in the agreements.

A review of the record demonstrates that Sun Financial, LLC and Bay4 Energy Services, LLC also did not sign the agreements with Defendant Exyte Energy, Inc. It is not clear from the record whether these two entities are indispensable parties

pursuant to Fed. R. Civ. P. 19 given their alleged relationship to the Plaintiffs and their interest in the projects.

The Court cannot evaluate diversity jurisdiction without determining whether there are indispensable parties pursuant to Fed. R. Civ. P. 19 and whether their inclusion would defeat subject-matter jurisdiction. <u>Exxon Mobil Corp.</u>, 545 U.S. at 562.

Generally, the party moving for dismissal pursuant to Fed. R. Civ. P. 19 bears the burden of persuasion on the issue. <u>Makah Indian Tribe v. Verity</u>, 910 F.2d 555, 558 (9th Cir. 1990); <u>but see</u> <u>Pulitzer-Polster v. Pulitzer</u>, 784 F.2d 1305, 1309 (5th Cir. 1986). In this case, however, the issue was raised sua sponte by the Court and goes to the question of subject-matter jurisdiction, for which Plaintiffs have the burden of proving that subject-matter jurisdiction does exist, and they must present any necessary evidence to satisfy this burden. <u>St. Clair v. City of Chico</u>, 880 F.2d 199, 201 (9th Cir. 1989).

## III. Overlap Between Diversity Jurisdiction, Estoppel, And Alter-Ego

Plaintiffs Kenyon Energy, LLC and Clay M. Biddinger's Complaint seeks declaratory and injunctive relief, requesting that this Court find that they are not subject to Defendant Exyte Energy, Inc.'s demand for arbitration.

Plaintiffs moved for summary judgment on all claims.

Defendant requests the opposite relief and filed a Motion to

Compel Plaintiffs to participate in the pending arbitration.

Resolution of these issues requires evaluation of equitable doctrines under Hawaii state law such as estoppel, piercing the corporate veil, and alter-ego liability that overlap with the factual questions involving diversity jurisdiction.

### A.   Choice-of-Law

If the Court has subject-matter jurisdiction pursuant to diversity, it would apply ordinary state—law principles that govern the formation of contracts to determine if a valid arbitration agreement exists.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  A federal court sitting in diversity must apply the forum state's choice of law rules. Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014).  Pursuant to Hawaii law, the parties' choice of law will govern a contractual relationship where the chosen law shares a nexus with the parties or the contract.  See Airgo, Inc. v. Horizon Cargo Transp., Inc., 670 P.2d 1277, 1281 (Haw. 1983).

The two contracts at issue contain a choice-of-law provision.  A choice-of-law provision designates the appropriate law to be applied when addressing questions regarding a contract's formation, construction, and enforceability.  See Hawaii Island Air, Inc. v. Merlot Aero Ltd., 2015 WL 675512, at *19 (D. Haw. Jan. 30, 2015).

The two contracts' respective choice-of-law provisions require contractual issues to be resolved pursuant to "the laws of the State in which the Project is located." (Contracts, attached as Exs. 1 and 2 to Def.'s Motion to Compel Arbitration at §26, ECF No. 68-3). The projects at issue are located in the State of Hawaii. Hawaii law governs the interpretation of the contracts. Airgo, Inc., 670 P.2d at 1281.

**B. Non-Signatories To A Contract May Be Subject To Its Arbitration Provision Under Limited Circumstances**

Pursuant to Hawaii law, non-signatories to an arbitration agreement generally cannot be compelled to submit to arbitration. Siopes v. Kaiser Found. Health Plan, Inc., 312 P.3d 869, 885-86 (Haw. 2013); Young v. Cnty. of Hawaii, No. CIV. 11-00580 ACK-RLP, 2012 WL 2366016, at *6 (D. Haw. June 19, 2012).

In addition, corporate officers who have signed a contract in their corporate capacity are usually not liable in their individual capacity. See In re Boon Glob. Ltd., 923 F.3d 643, 651 (9th Cir. 2019) (citing Restatement (Third) of Agency § 6.01, rep. n.2 (Am. Law Inst. 2003)).

Plaintiff Clay M. Biddinger represents that he signed the agreements as the manager of SSA Solar of HI 2, LLC and SSA Solar of HI 3, LLC, but there are questions of fact as to whether Plaintiff Kenyon Energy, LLC, Plaintiff Biddinger in his individual capacity, and/or non-parties Sun Financial, LLC and

Bay4 Energy Services, LLC may be subject to the agreements pursuant to Hawaii state law principles.

### 1.   Non-Signatories May Be Subject To A Contract Under Certain Exceptions

Hawaii law recognizes six exceptions to the rule that a non-signatory is generally not subject to a contract it has not signed.  See Siopes, 312 P.3d at 888-89; Young, 2012 WL 2366016, at *6.

The exceptions are as follows:

(1)  incorporation by reference;

(2)  assumption;

(3)  agency;

(4)  alter-ego doctrine/veil-piercing;

(5)  equitable estoppel;

(6)  third-party beneficiary.

Sher v. Cella, 160 P.3d 1250, 1254-56 (Haw. App. 2007).

### 2.   Numerous Questions Overlap Between The Diversity Jurisdiction And Equitable Doctrines Analyses

There are numerous questions before the Court that affect the analysis of both diversity jurisdiction and whether Plaintiffs may be subject to arbitration based on equitable principles found in (1) alter-ego doctrine/veil-piercing; (2) agency; and (3) equitable estoppel.

22

### a.   Alter-Ego Doctrine / Veil-Piercing

The doctrine of alter-ego liability, often referred to as piercing the corporate veil, enables a plaintiff to hold a non-signatory to a contract liable for the conduct of a signatory. See Greenspon v. Deutsche Bank Nat'l Tr. Co., 550 P.3d 258, 2024 WL 2874544, at *3 (Haw. App. June 7, 2024).

Hawaii courts are traditionally reluctant to disregard a chosen corporate form and pierce the corporate veil.  See Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc., 982 P.2d 853, 870 n.12 (Haw. 1999).  In the exceptional case, the Court can pierce the corporate veil where: (1) the non-signatory effectively governed the conduct of the signatory such that the two entities have no practical separateness and (2) continued adherence to the illusion of separateness would permit fraud or promote injustice.  See Calipjo v. Purdy, 439 P.3d 218, 229-30 (Haw. 2019); Greenspon, 2024 WL 2874544, at *3.

Whether the alter-ego doctrine applies is a question of fact.  Greenspon, 2024 WL 2874544, at *3.

When considering the separateness prong, specifically if there is any practical separateness between Plaintiffs and the SSAs that signed the subject contract, Hawaii law examines 25 factors.  See Calipjo, 439 P.3d at 229, n.23.  There are critical questions of fact as to a majority of these factors.

23

In evaluating whether to pierce the corporate veil, the Court must also look to whether continued adherence to the illusion of separateness would permit fraud or promote injustice.

### b.   Agency Principles

Non-signatories may be compelled to arbitrate pursuant to agency principles.  In a principal-agent relationship, the agent serves as a fiduciary to a principal.  An agent is permitted to act on behalf of the principal provided both parties consent to the relationship.  Hilo Prod., Inc. v. Target Corp., Civ. No. 22-00069 SOM-WRP, 2023 WL 1102616, at *11 (D. Haw. Jan. 30, 2023); Restatement (Second) of Agency § 1(1) (1958).

Under Hawaii law, an agent can bind a non-signatory principal to arbitration, but the requirements are exacting. Siopes, 312 P.3d at 886-87.  The agency arrangement must (1) authorize the agent to act on behalf of the principal, and (2) the authorization to act on the principal's behalf must be relevant to the legal dispute.  Id.

A principal-agent relationship may be established in one of three ways.

First, an agent may have actual authority to bind the principal based on an oral or written agreement between the parties in which the principal has delegated authority and authorized the agent to operate on the principal's behalf.  Hilo

Prod., Inc., 2023 WL 1102616, at *12-13.

Second, an agent may have implied authority where there is no express agreement but the agent nonetheless reasonably believes that it has authority to operate on the principal's behalf.  Id.

Third, an agent can have apparent authority where a principal's conduct leads a third party to reasonably believe the agent has authority to act on the principal's behalf.  Id. at *13-14.; see Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship, 166 P.3d 961, 972, 974 (Haw. 2007); Pancakes of Hawaii, Inc. v. Pomare Properties Corp., 944 P.2d 97, 105 (Haw. App. 1997).

### c.   Estoppel

Non-signatories to a contract may be required to arbitrate a dispute pursuant to the doctrine of equitable estoppel.  Siopes, 312 P.3d at 887-88; Sher, 160 P.3d at 1255-56.  The purpose of estoppel is to prevent a non-signatory from knowingly exploiting the benefits of a contract while simultaneously avoiding the burdens that same contract imposes.  Setty v. Shrinivas Sugandhalaya LLP, 3 F.4th 1166, 1169 (9th Cir. 2021); Nguyen, 763 F.3d at 1179.

Equitable estoppel is relevant in a narrow set of cases. Comer v. Micor, Inc., 436 F.3d 1098, 1101-02 (9th Cir. 2006). For estoppel to apply the non-signatory must have received a

25

direct benefit from the contract in question.  Sher, 160 P.3d at 1256; Bowen Hunsaker Hirai Consulting, Inc. v. Turk, 310 P.3d 1052, at *3-4 (Haw. App. 2013).  A direct benefit is one that arises directly from the terms of the agreement.  The Court looks to whether the benefit is non-speculative and directly traceable to the agreement.  Legacy Carbon LLC v. Potter, Civ. No. 17-00231 SOM-KJM, 2017 WL 3710787, at *6-*7 (D. Haw. Aug. 28, 2017).

Estoppel can also be triggered where a non-signatory seeks to enforce the terms of the agreement against a signatory for its direct benefit.  Sher, 160 P.3d at 1256 (citing Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000)).

Here, there are numerous, material questions of fact as to the corporate and business structures of the Parties involved in this case that precludes a finding as to subject-matter jurisdiction based on diversity.

The questions as to diversity jurisdiction overlap with questions regarding equity principles.

Given the complex factual questions at issue, jurisdictional discovery or presentation of evidence may be necessary to establish or challenge subject-matter jurisdiction.  Laub v. U.S. Dep't of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003); Harris Rutsky & Co. Ins. Serv. v. Bell & Clements, Ltd., 328 F.3d 1122, 1135 (9th Cir. 2003).

## CONCLUSION

The Court is without sufficient information to determine whether it has subject-matter jurisdiction over this dispute pursuant to diversity jurisdiction.

In addition, the Court is without sufficient information to determine whether all indispensable parties have been joined in this litigation pursuant to Fed. R. Civ. P. 19.

The subject-matter jurisdiction issues are intertwined with the questions regarding corporate structure and equity principles that are necessary to resolve the arbitration questions at issue in this case.

Plaintiffs Kenyon Energy, LLC and Clay M. Biddinger's Motion for Summary Judgment (ECF No. 70) and Defendant Exyte Energy, Inc.'s Motion to Compel Arbitration is (ECF No. 69) are **DENIED**.

IT IS SO ORDERED.

Dated: October 1, 2024, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

Kenyon Energy, LLC; Clay M. Biddinger v. Exyte Energy, Inc., Civ No. 22-00534 HG-RT, **ORDER CONCERNING SUBJECT-MATTER JURISDICTION AND ORDER DENYING PLAINTIFFS KENYON ENERGY, LLC AND CLAY M. BIDDINGER'S MOTION FOR SUMMARY JUDGMENT (ECF No. 70) AND DENYING DEFENDANT EXYTE ENERGY, INC.'S MOTION TO COMPEL ARBITRATION (ECF No. 69)**